## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **NAYLOR MEDICAL SALES & RENTALS,** | ) | |
| **INC. and JERRY ALLEN UNDERWOOD,** | ) | |
| | ) | |
| **Plaintiffs/Counter-Defendants,** | ) | |
| | ) | |
| **v.** | ) | **No. 09-2344-STA-cgc** |
| | ) | |
| **INVACARE CONTINUING CARE, INC., f/k/a** | ) | |
| **HEALTHTECH PRODUCTS, INC., and** | ) | |
| **INVACARE CORPORATION,** | ) | |
| | ) | |
| **Defendants/Counter-Plaintiffs.** | ) | |

---

### ORDER GRANTING PLAINTIFFS/COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

On September 14, 2010, Plaintiffs/Counter-Defendants Naylor Medical Sales & Rentals, Inc. and Jerry Allen Underwood (collectively "Plaintiffs") filed a Motion for Summary Judgment (D.E. # 59) as to Counts II, III, and IV of Defendants/Counter-Plaintiffs Invacare Continuing Care, Inc. and Invacare Corporation's (collectively "Defendants") Counterclaim (D.E. # 3). Defendants filed a Response in Opposition to the Motion (D.E. # 64) on October 18, 2010. Plaintiffs, upon receiving leave of this Court, then filed a Reply to Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment (D.E. # 67) on November 3, 2010. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

The following facts are undisputed for purposes of this Motion unless otherwise noted. Naylor Medical Sales & Rentals, Inc. ("Naylor") was engaged in the business of acting as an

1

independent representative for the sale or rental of healthcare products.  Pls.' Statement of

Undisputed Facts ¶ 1.  On March 31, 2008, Plaintiffs sold substantially all of Naylor's assets to

Defendants.  (*Id.*)  Jerry Allen Underwood ("Underwood") was Naylor's sole stock holder.  (*Id.*)

On April 22, 2009, Plaintiffs filed a Complaint in Shelby County Chancery Court

asserting claims of breach of contract, conversion, defamation, and violations of the Tennessee

Consumer Protection Act.  The Defendants filed a Notice of Removal (D.E. # 1) with this Court

on June 2, 2009.  Defendants then filed an Answer to Plaintiff's Complaint and asserted

Counterclaims (D.E. # 3) on June 5, 2009.

In the Counterclaim, Defendants allege that Plaintiffs intentionally withheld their

knowledge of the impending exit of several of Naylor's customers from Defendants.[1]  (*Id.* ¶ 3.)

Specifically, the Defendants assert that Plaintiffs knew that "three of its key customers, Kindred

Hospital, Methodist Hospital, and Briley Nursing and Rehab, would not continue to do business

with Naylor after the closing of the purchase by" Defendants.  (*Id.*)  Defendants state that "each

of these customers informed [Plaintiffs] that they were planning to cease doing business with

Naylor" and that "without the knowledge of [Defendants] and in order to induce [Defendants] to

proceed with the assets purchase, [Plaintiffs] convinced these key customers to remain with

Naylor and continue do business with Naylor until the sale of its assets was complete."  (*Id.*)

Defendants further contend that pursuant to the Asset Purchase Agreement, Plaintiffs represented

to Defendants that "no customer . . . has terminated, or threatened to terminate, its relationship

with [Naylor] or has in 2007 decreased or delayed materially, or threatened to decrease or delay

---

[1] Defendants state that following the closing, several "key customers" ceased or drastically
reduced their rentals from Defendants.  Def. Statement of Additional Material Facts ¶ 24.

materially, its purchases or rentals from [Naylor]."  Asset Purchase Agreement § 4.5.6.

Accordingly, these factual allegations are the basis for Count II, Breach of Representations and

Warranties, Count III, Fraudulent Inducement, and Count IV, Violation of the Tennessee

Consumer Protection Act in the counterclaim.   Pls.' Statement of Undisputed Facts ¶ 4.

      In their first Rule 26 Initial Disclosures, Defendants identified three persons who they

intend to use to support their claims and defenses–Michael Will, Jason Dragavon, and

Christopher Yessayan. (*Id.* ¶ 6.)  On August 27, 2009, Plaintiffs' lawyer sent a letter to

Defendants' lawyer asking for the identity of witnesses supporting the Defendants' claims that

Plaintiffs knew three of its key customers would not continue to do business with Naylor after

the closing and that Plaintiffs had convinced these key customers to remain with Naylor until the

sale of its assets was complete.  (*Id.* ¶ 7.)  On September 1, 2009, Defendants sent a second

Initial Disclosure identifying the same three witnesses and then adding "representatives from

First TN Bank, N.A.," "representatives from Kindred Hospital," "representatives for Methodist

Hospital," and "representatives from Briley Nursing and Rehab." (*Id.* ¶ 8.)

      On September 14, 2009, Underwood testified, via affidavit, that at no time did he

"become aware of the impending exit of several of Naylor's customers" and that he "did not have

knowledge that any of the three Customers [Kindred Hospital, Methodist Hospital, and Briley

Nursing and Rehab] would not continue to do business with [Defendants] after their purchase of

the assets of Naylor. (*Id.* ¶ 9 (citing Underwood Aff., ¶ 6).)[2]

---

[2] Defendants dispute Underwood's testimony and state that "[t]he testimony of Mike Will
demonstrates that Underwood was indeed aware that some of Naylor's customers would not
continue renting after the asset purchase."  Defs.' Resp. to Pls.' Statement of Material Facts ¶ 9.
*See Infra* note 5.

Upon these facts, on September 22, 2009, Plaintiffs filed a Motion for Summary Judgment on Counts II, III, and IV of Defendants' Counterclaims. (D.E. # 7.) The Defendants responded in opposition by filing a Motion for Discovery under Rule 56(f). (D.E. # 11.) On June 14, 2010, this Court found that Defendants were entitled to more discovery to respond to Plaintiffs' Motion, and, consequently, this Court denied Plaintiffs' Motion for Summary Judgment without prejudice to re-file after appropriate discovery was complete. (D.E. # 57.) Order on Mot. for Summ. J., 9-10.

On September 14, 2010, Plaintiffs re-filed their Motion for Summary Judgment with the inclusion of the additional facts stated below.

Plaintiffs begin by discussing the deposition of Michael Will ("Will"), an employee of the Defendants. Plaintiffs state that Will testified that "(1) he spoke to a few individuals working for Naylor customers and (2) that those individuals told him information supporting the allegations in the Counter-Complaint[,]" and that "Mr. Will named Charles Nunn as the sole identifiable employee of a Naylor customer that told him of facts supporting Counts II, III, and IV of the Counter-Complaint." Pls' Statement of Undisputed Facts ¶ 17 (citing Will Dep., pp. 25, 41, 44, 54, 58, 59, 63).[3]

Defendants dispute the Plaintiffs' characterization of Will's testimony. Defendants assert that "Mr. Will testified that he spoke to employees of Plaintiffs' former customers and former

---

[3] Plaintiffs have cited this series of pages from Will's deposition; however, Plaintiffs have not placed any portion of the deposition in the record. Defendants do dispute the Plaintiffs' characterization of Will's testimony. In disputing this testimony, the Defendants cite to pages of the deposition as well. Defendants have attached these pages of the deposition in the record. Many of the pages Defendants have cited coincide with Plaintiffs' cited pages; however, there are a few that do not coincide. The pages that Plaintiffs cite to that are not in the record are pages 25, 41, and 44.

employees of Plaintiffs[] ([Will Dep.], pp. 53-54, 57, 58-59, 63, 64, 66, 69)" and assert that "Mr. Will identified Charles Nunn and Jason Dragavon, and though he could not recall names, he identified other individuals as well. (*Id.* at 57-58, 63, 66.)"[4]  Defs.' Resp. to Pls.' Statement of Material Facts ¶ 17.

Charles Nunn ("Nunn"), a former employee of Kindred Hospital, testified by affidavit that "[p]rior to the sale [of Naylor], [he] did not threaten or advise anyone at Naylor that Kindred would terminate or decrease its purchases or rentals from Naylor."  Pls.' Statement of Undisputed Facts ¶ 19 (citing Nunn Aff. ¶ 9.)  Further, Nunn testified that he had "no knowledge of any facts that support an allegation that [Underwood] knew that any of Naylor's customers were going to terminate or reduce their rental relationship with Naylor's successor (Invacare) after the Sale. . . . [And that he had] no knowledge of any facts that support an allegation that [Underwood] knew that Kindred was going to cease renting from Naylor's successor (Invacare) after the Sale." (*Id.* ¶ 20 (citing Nunn Aff. ¶ 8.).)

Defendants dispute Nunn's testimony with testimony from Will's deposition.  Defs.' Resp. to Pls.' Statement of Material Facts ¶ 19. Specifically, they cite to pages 63 and 64 (the Court has included excerpts from these pages[5]):

---

[4] Defendants specifically point the Court to these statements: Will Dep., p. 52 (describing how one of Plaintiffs' customers "had bought equipment that [Underwood] knew they were out to bid on and going to buy, that didn't disclose that to us before we bought the company"); pp. 53-54 (describing how employees at one of Plaintiffs' former customers told Mr. Will that Plaintiffs knew that customer was buying its own equipment and would no longer be renting); p. 57 ("And they said that Naylor was aware that these changes were afoot."); pp. 58-59 ("And I asked them did Naylor know about it.  And they said, yes, Naylor knew about it. . . .  They said Naylor knew of those changes.").)  Defs' Resp. to Pls' Statement of Material Facts ¶ 9.

[5] Defendants did not cite to any specific lines on pages 63 and 64.  The Court found these statements most relevant to Defendants' dispute.

Q.      Did you speak to anyone at Kindred Hospital who said they were planning to cease doing business with Naylor or reduce their business with Naylor before the asset purchase was complete?

A.      Yeah.  Charles Nunn said that to me directly.

* * *

Q.      And what did Mr. Nunn tell you?

A.      . . . that through the end of 2007 and early 2009, that he was being forced to use his contracted provider, and he couldn't hold them off any longer. He said that he held them off for as long as he could.  He had spoken with people at Naylor.  He did mention [Underwood] specifically on this one, saying that he was –he couldn't hold off [sic] anymore and that [Underwood] pushed him to hold it off and hold it off a little bit longer.

Will Dep., 63: 10-16 and 64: 7-23.

Plaintiffs then cite the affidavits of Jason Dragavon ("Dragavon") and James Bradley Hays ("Hays"), two former employees of Naylor, who have testified about their former employment.  Pls.' Statement of Undisputed Facts ¶ 21.  In his affidavit, Dragavon stated that he "spoke with individuals employed by various customers of Naylor almost daily.  In particular, [he] frequently spoke to individuals at Kindred Hospital and Briley Nursing and Rehabilitation Center."  Dragavon Aff. ¶ 4.  He further testified that none of these customers "threatened to terminate or decrease its purchases or rentals from Naylor," and that no one working for these Naylor customers "advised anyone at Naylor that it would terminate or decrease its purchases or rentals from Naylor." (*Id.* ¶ 5 & 8.)

Hays, in his affidavit, made similar statements.  Hays stated that he "spoke with individuals employed by various customers of Naylor almost daily.  In particular, [he] frequently spoke to individuals at Methodist Germantown, Methodist Extended Care Hospital, Methodist

Hospital Central, Methodist North and The Med." Hayes Aff. ¶ 4. He further testified that none of these customers "threatened to terminate or decrease its purchases or rentals from Naylor," and that no one working for these Naylor customers "advised anyone at Naylor that it would terminate or decrease its purchases or rentals from Naylor." (*Id.* ¶ 5 & 8.)

Defendants dispute Dragavon's testimony that he did not know that Kindred would no longer rent equipment from Naylor prior to the asset purchase by again citing to Will's deposition. Defs.' Resp. to Pls.' Statement of Material Facts ¶ 19. Specifically, they cite to pages 66 and 69 (the Court has included excerpts from these pages[6]):

Q.    . . . Do you know what Charles Nunn told Jason Dragavon?

A.    Jason reported to me that when he talked with Charles–or that he had had discussions with Charles about what was going on with the business and that he had been trying to work with them to keep the business and to keep Charles fighting for it, that Charles mentioned to Jason that he did not –he wasn't going to be able to keep using us.

\* \* \*

Q.    Did you speak to anyone at Briley Nursing who said that Briley was planning to cease doing business with Naylor or reduce their business with Naylor before the asset purchase was completed?

A.    Briley was – Jason Dragavon had spoken with the purchasing person there. And the purchasing person told him that he was in a similar situation, going to have to use a national provider because Briley had been bought out by a nursing home chain and that the process of buying out had been over the previous months and that Naylor had known that they were going to be bought out.

Q.    Did he say that Naylor knew that they would lose the business?

---

[6] Defendants did not cite to any specific lines on pages 66 and 69. The Court found these statements to be most relevant to Defendants' dispute.

7

     A.     He did not say that.  He said that they knew they were going to be bought out, which put the business at risk, and was not shared with us before we bought the company.

Will Dep., 66: 11-20 and 69: 1-20.

In this Motion, Plaintiffs argue that Defendants have offered no admissible proof to support the allegations in Count II, III, or IV of the Counterclaim.  Plaintiffs state that Federal Rule of Civil Procedure 56(e) provides that an affidavit submitted in support or opposition to the motion for summary judgment must "set out facts that would be admissible in evidence."[7] Plaintiffs submit that Defendants fail to bring forward any admissible evidence to support the allegations in Count II, III, or IV of the Counterclaim.  Additionally, Plaintiffs highlight that they have filed numerous affidavits specifically denying the allegations in the Counterclaim. Consequently, Plaintiffs posit that there is no genuine dispute as to any material facts supporting Counts II, III, and IV of the Counterclaim, and, thus, Plaintiffs submit that they are entitled to judgment as a matter of law.

Defendants, on the other hand, argue that a genuine dispute of material fact does exist as to Counts II, III, and IV of their Counterclaim.  Defendants submit that Plaintiffs' Motion is improper because it relies on an incorrect legal standard.  Specifically, Defendants state that the admissibility of evidence is irrelevant at this stage of litigation.  Defendants state that via Will's deposition testimony, they have put forth evidence to call into question the facts asserted by Plaintiffs and, thus, have created a genuine issue as to those facts.  Alternatively, Defendants argue that even if the admissibility of the evidence were relevant and even if that evidence were inadmissible as affirmative evidence, that the evidence is nonetheless admissible to impeach

---

[7] Plaintiffs filed this Motion prior to the textual changes of Rule 56 becoming effective.

the affidavits supplied by Plaintiffs.  As such, Defendants submit that summary judgment is not appropriate on these claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the

court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[8]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[9]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[10]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[11]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[12]  When determining if summary judgment is appropriate, the Court should

---

[8] Fed. R. Civ. P. 56(a).  The new text of Rule 56(a) became effective December 1, 2010. According to the official comments following Rule 56, "[t]he standard for granting summary judgment remains unchanged."

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[11] *Matsushita*, 475 U.S. at 586.

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[13]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[14]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[15]  Finally, the "judge may not make credibility determinations or weigh the evidence."[16]

## ANALYSIS

The admissibility of evidence is relevant at the summary judgment stage of litigation. According to the Sixth Circuit, the submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial.[17]

> Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial.  However, the party opposing the summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that *will* be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.  Such "evidence submitted in opposition to a motion for summary judgment must be admissible." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185,

---

[13] *Id*. at 251-52 (1989).

[14] *Celotex*, 477 U.S. at 322.

[15] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[16] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[17] *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Celotex*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.")).

1189 (6th Cir. 1997)) That is why "[h]earsay evidence . . . must be disregarded." *Ibid.*[18]

Additionally, the new text of Rule 56 appears to be consistent with Sixth Circuit precedent. In fact, Rule 56(c)(2) specifically states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Therefore, the admissibility of evidence is relevant at this stage in the litigation.

As detailed above, the Defendants, in this case, have offered statements contained within the deposition of Mike Will to show that there is a genuine dispute of material fact. The Plaintiffs have argued that each of these statements are inadmissible hearsay. The Defendants response to the Plaintiffs' assertion was simply that the admissibility of this evidence is irrelevant at this stage of litigation, which the Court has shown to be an incorrect statement. Additionally, the Defendants have not disputed Plaintiffs' assertion that these statements are hearsay nor have they argued that the material is admissible as presented or under one or more of the hearsay exceptions, except to say that the evidence is admissible to impeach the affidavits supplied by the Plaintiffs.

Looking at the evidence in the light most favorable to the Defendants, this Court finds, and the Defendants have not disputed, that every statement presented by Defendants to contend that a genuine dispute of material fact exists is hearsay. Even if these hearsay statements might be admissible at trial for impeachment purposes, for these statements to be considered for summary judgment purposes, the statements must be admissible as substantive evidence. Consequently, this Court finds that the Defendants have offered no evidence to demonstrate

---

[18] *Alexander*, 576 F.3d at 558.

that there is a genuine dispute of material fact, and, as such, this Court finds that summary judgment on Counts II, III, and IV of the Counterclaim should be granted.

## **CONCLUSION**

For the reasons set forth above,  Plaintiffs/Counter-Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: December 2nd, 2010.

12

13